## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DIANA M. ELINICH, INDIVIDUALLY : | CIVIL ACTION |
| AND FOR AND ON BEHALF OF ALL : | |
| PERSONS SIMILARLY SITUATED, : | CLASS ACTION |
| : | |
| **Plaintiff** : | 2012-cv- |
| : | |
| v. : | 73 P.S. § 201-1, *et seq.* |
| : | 18 U.S.C. §1961, *et seq.* |
| DISCOVER BANK, AND : | 15 U.S.C. § 1692a, *et seq.* |
| 12 Reads Way : | |
| Newcastle, DE 19720 : | |
| : | |
| And : | |
| : | |
| DB SERVICING CORPORATION : | |
| 1209 Orange Street : | |
| Wilmington, DE 18947 : | |
| : | |
| And : | |
| : | |
| WELTMAN, WEINBERG & REIS, LPA : | |
| 323 W. Lakeside Avenue : | |
| Suite 200 : | |
| Cleveland, OH 44113 : | |
| : | |
| : | |
| **Defendants** : | |

## CLASS ACTION COMPLAINT IN CIVIL ACTION

## I.   INTRODUCTION

1.   Plaintiff brings this class action on behalf of herself and a nationwide class of similarly situated individuals (the "Class"), as described below.

2.   Defendants have uniformly engaged in a scheme of illegal and deceptive business practices that violate federal and state law in attempting to collect credit card debt from persons using false information and documentation, and without proper documentation sufficient to establish and substantiate the cause(s) of action attempted to

be the bases for the respective collection actions and the categories of charges attempted
to be imposed upon the Plaintiff and the members of the Class.

3. This scheme is carried out by Defendants by means of centrally controlled
sets of policies and practices, and the like, and is conspiratorially implemented by and
among other entities and persons (co-conspirators) with form documents, form notices,
and form complaints, against alleged debtors, yet with knowingly false documentation
and without information necessary to justify the cause(s) of action being asserted.

4. The scheme is carried out knowingly using false and inapplicable
documentation systematically provided by Defendants attempting to foist upon the
victims the imprimatur of substantiating documentary evidence.

5. Defendants routinely and conspiratorially participate and engage in the
initiation and perpetuation of attempts to collect debt from and against persons the
documentation for which is knowingly false, non-existent, or otherwise not available to
substantiate the cause(s) of action asserted in attempting to collect alleged debt
obligations, and the categories sought to be collected.

6. Defendant, Weltman, Weinberg & Reis, LPA (hereinafter referred to as
"WWR"), representing Discover Bank (hereinafter referred to as "Discover") and DB
Servicing Corporation (hereinafter referred to as "DB"), as a collection attorney[1] on a
national basis [believed to be within thirty (30) states], attempt to justify the collection
efforts/actions referred to them by Discover and DB for alleged credit card debt by filing
law suits, continuing and perpetuating the law suits without proper documentation,

---

[1]Plaintiff believes that there is a national base of collection attorneys representing
Discover and DB as "debt collectors"; however, this national base of attorneys is not
named as defendants at this time.   Plaintiff reserves the right to join these other attorneys
in the future.

knowingly attaching incorrect, false, and otherwise irrelevant documentation as exhibits to complaints and/or as evidence for trial  These wrongful activities are so that the consumer will not further question or investigate the efficacy of the complaint, exhibits, and other evidentiary documentation, and submit to payment of whatever charges are levied against the consumers.

7.      Basically, in their respective attempts to collect debts from consumers, defendants employ form contracts as supporting documentation on complaint templates ostensibly as the basis for the charges imposed or attempted to be imposed upon consumers being sued by Discover and DB for alleged credit card debt.

8.      These form contracts, referred to as "Cardmember Agreements" or "Customer Agreements", are all dated, copyrighted, issued after the date of issuance of the subject credit cards. Thus, in the captioned matter, Plaintiff was issued a credit card in the year 1999; the Cardmember Agreement attempted to be used by Defendants as the contract governing the transaction is dated 2011. The 2011 Cardmember Agreement is **NOT** an amendment or a modification, but an original Customer Agreement.

9.      It is clearly impossible for a contract dated after the date of the credit card issuance to act as the governing agreement between the parties.

10.     Yet, on belief, Discover and its servicer, DB, have committed to writing and have disseminated, either through the United States Postal System and/or the United States wire system, their instruction and authorization to all of their collection attorneys throughout the United States of America to use the false contracts as the governing contracts for credit card holder who are the subject of collection efforts.

11.     The "after-dated" Cardmember Agreement is clearly not the applicable operative agreement, but is apparently a form of agreement that is/was apparently "available", "convenient", to attach as an exhibit and present as evidence. The Cardmember Agreement significantly post-dates the dates that the credit card was allegedly issued and can not be the operative Customer Agreement.

12.     Discover and DB and their national attorney base require the use of the inapplicable Customer Agreements by deliberate and intentional design to avoid, *inter alia*, the necessity to employ and attach the Cardmember Agreement issued concurrently with the credit card issuance.

13.     Plaintiff alleges that this practice constitutes violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692a, *et seq* ("FDCPA"), and state statutes and common law.

14.     Plaintiff alleges that this practice constitutes violation of the federal Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.* common law.

15.     Plaintiff alleges that this practice constitutes violation of Pennsylvania's Unfair Trade and Consumer Protection Laws 73 § 201-1, *et seq.*

16.     Plaintiff seeks injunctive relief to prevent the continuation and recurrence of the challenged conduct, and to assure uniform standards by which Defendants will not seek collection from consumers knowingly and intentionally using false documentation.

17.     Plaintiff seeks injunctive relief to prevent the continuation and recurrence of the challenged conduct, and to assure uniform standards by which Defendants will not

4

attempt to bypass spoliation so that Defendants will provide proper documentation of an explanation as to why the proper, representative documentation is not available.

18.     Plaintiff also seeks restitution for damages, including, but not limited to, costs incurred, collections made, statutory damages, punitive damages, attorney's fees and costs, and whatever other relief this Court may deem appropriate.

## II.     **PARTIES**

Paragraphs one through and including eighteen above are incorporated herein by reference as if set forth herein at length.

19.     Plaintiff, Diana M. Elinich ("Plaintiff" or "Elinich"), is an individual residing at 6615 Groveland Road, Pipersville, PA 18947. Plaintiff has been sued by Discover as discussed below. There has been no adjudication on the law suit against Elinich.

20.     Defendant, Discover, is a national credit card issuer, which its principal offices in the State of Delaware, at the address set forth in the caption hereto. Discover is a federal savings bank.

21.     Defendant, DB, is an affiliate of Discover with its principal office also in Delaware, but at a different location than Discover. At all times relevant, DB is a servicer for Discover. As a servicer, DB is in the business of administering defaulted accounts of Discover, one of the operations thereof is believed to be initiating and perpetuating law suits against alleged credit card debtors, the selection of attorneys for the purpose of filing law suits seeking collection of amounts purportedly owed. At all times relevant, DB is believed to be a conspirator along with Discover and the attorneys

5

used by both Discover and DB for collection of the alleged debts. DB is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

22.     WWR is a national collection law firm practicing, on belief, in thirty (30) states, has its principal offices in Cleveland, Ohio. At all times relevant, WWR is prosecuting the claim on behalf of Discover and DB in the case against Counterclaim Plaintiff, as more fully discussed below, in "Factual Statement". WWR is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6). A representative of WWR executed the verification to the Amended Complaint in the Underlying Action.

**III.     JURISDICTION AND VENUE**

Paragraphs one through and including twenty-two above are incorporated herein by reference as is set forth herein at length.

23.     Jurisdiction is conferred upon this Court pursuant to 15 U.S.C. § 1692k(d) ("FDCPA").

24.     Jurisdiction is conferred upon this Court pursuant to 18 U.S.C. § 1964(c) ("RICO").

25.     Venue is appropriate in this district as the violations underlying this action were made in this District; all defendants conduct business in this district.

**IV.     SUMMARY STATEMENT OF THE CASE**

Paragraphs one through and including twenty-five above are incorporated herein by reference as if set forth herein at length.

26.     This case arises from a scheme concocted and perpetuated by Defendants, in coordination and in conjunction with each other, described in the following scenario:

When defendants engage in the initiation and perpetuation of credit card collection law suits, Cardmember Agreements intended to reflect and govern the

6

contractual relationship between the parties are intentionally misrepresented by defendants as the governing Cardmember Agreements and are purposely and intentionally false representations of the actual Cardmember Agreements that actually govern the alleged transactions. The proffered Cardmember Agreements are dated substantially after the date of any credit card issuance, and, therefore, cannot represent the true Cardmember Agreements; that is, the proffered Cardmember Agreements, without the underlying Cardmember Agreements issued at the time of the credit issuance as the basis for all further terms and conditions, are false representations of the true Customer Agreements entered into by the parties.

27.     In too many cases, the wronged consumers – those whom the United States Congress has referenced as "the least sophisticated consumers" - succumb to the perceived power and ostensible computer-accuracy of the creditors and debt collectors, and these improperly named litigant-defendants pay and/or permit judgments to be achieved against them.  Otherwise, these wronged consumers are forced to seek counsel at a financial cost.

28.     These acts by defendants have violated and continue to violate federal and state law, including common law, and Plaintiff and the members of the Class have suffered damages as a result.

## V.     CLASS ACTION ALLEGATIONS

Paragraphs one through and including twenty-eight above are incorporated herein by reference as if set forth herein at length.

29.     This case is properly maintainable as a nationwide Class action pursuant to and in accordance with Federal Rule of Civil Procedure ("F.R.C.P."), Rule 23(a), and 28 U.S.C. 1332(d), *inter alia*:

(1)     On belief, the Class is so numerous that joinder of all members is impractical.  Although the size of the Class is not specifically known, the number of Class members is substantial, believed numbering at least in the tens of thousands.

7

(2)     There are substantial questions of law and fact common to the Class.

(3)     The claims of the representative Plaintiff are typical of the claims of the members of the Class.

(4)     The representative Plaintiff will fairly and adequately protect the interests of the Class under the criteria set forth in F.R.C.P. 23.

(5)     A class action under the circumstances discussed herein provides the most fair and efficient method for adjudication of the controversy under the criteria set forth in F.R.C.P. 23.

30.     This case is properly maintainable as a Class action pursuant to and in accordance with F.R.C.P. 23(b)(3).

a.     The issues of fact are common to the members of the Class, as required by Local Rule of Civil Procedure ("Local Rule") for the Eastern District of Pennsylvania, 23.1(b)(2)(D).

b.     The questions of law are common to the members of the Class, as required by Local Rule 23.1(b)(2)D).

c.     The questions of law and the questions of fact predominate for the Class over any questions of law and/or fact affecting only individual members of the Class.

d.     A Class action is superior to any other action for the fair and efficient adjudication of the controversy as the commonality of factual and legal questions for the Class are overwhelmingly predominant.

8

e.    As the questions of law and of fact are common to the members of the Class, and considering the prospective individual damages at issue, the interests of the members of the Class will best be controlled and served by this action.

f.    There is no reason why the litigation should not proceed in this particular forum.

g.    There are no unusual difficulties foreseen to be encountered in the management of this Class action.

h.    Plaintiff is aware of similar actions involving similar issues involving Discover, and other defendants, having been filed in the United States District Court for the Eastern District of Pennsylvania. *See* Footnote 3, below

i.    The claim by Plaintiff, herself, and for and on behalf of the members of the Class, is justified as a Class action for the reason that, although the size of the Class is not specifically known, the number of Class members is substantial, believed numbering at least ten thousand on a nationwide basis.

31.    A Class action is superior to any other action for the fair and efficient adjudication of the controversy as the commonality of factual and legal questions for the Class is overwhelmingly predominant.

32.    As the questions of law and of fact are common to the members of the Class, and considering the prospective individual damages at issue, the interests of the members of the Class will best be controlled and served by this action.

33.    The claims by Plaintiff, for herself and for and on behalf of the members of the Class, are justified as a Class action for the reason that the causes of action for the

Plaintiff is the same cause of action for all of the members of the Class derived from the following issues:

        a.      Whether Defendants, in initiating and perpetuating collection law suits, have wrongfully and/or knowingly done so regardless of the knowing lack corroborating documents or evidence available to substantiate the claims asserted;

        b.      Whether Defendants, in initiating and perpetuating collection law suits, have wrongfully, intentionally and/or knowingly attached clearly inapplicable and false exhibits and evidence, falsely representing that they are the applicable contracts;

        c.      Whether Defendants have a uniform policy of attaching and misrepresenting the purported contracts to the complaints as the applicable and governing contract between the parties, which agreements bear no relationship to the respective members of the Class;

        d.      Whether Defendants have a uniform policy of presenting and misrepresenting the purported contracts as evidence as the applicable and governing contract between the parties, which agreements bear no relationship to the respective members of the Class;

        e.      Whether defendants conspire one with the other to proffer the misrepresentations to the members of the Class;

        f.      Whether these acts and actions are violative of the FDCPA;

        g.      Whether these acts and actions are violative of RICO;

        h      Whether these acts and actions described above are violative of the consumer protection statutes of the Commonwealth of Pennsylvania;

i.      Whether Plaintiff and the members of the Class incurred damages

as a result of these violations and are Defendants liable therefor;

j.      Whether the acts of intentionally proffering inapplicable Customer

Agreements in false support of litigation claims constitutes an attempt to collect debts not

authorized by contract or law;

k.      Whether Plaintiff and the members of the Class are entitled to

injunctive relief, restitution, interest thereon, attorney's fees, punitive damages, statutory

damages and other damages as a result of the improper attempts to collect credit card

debt from non-liable persons?

## VI.    THE CLASS

Paragraphs one through and including thirty-three above are incorporated herein

by reference as if set forth herein at length.

34.    The above-named Plaintiff brings this action on behalf of herself and:

All persons who have been the named defendants in collection law suits brought
by and/or for and on behalf of Defendants for which the Defendants have attached
as corroborative exhibits and/or evidence Cardmember Agreements or Customer
Agreements ("Agreements") characterized by defendants as representing the
terms and conditions governing the use of the issued credit card when, in fact, the
referenced Agreements have clearly and knowingly not been the applicable
Agreement, as the referenced Agreements are dated after the date of the credit
card issuance, and cannot be representative of the contractual relationship by and
between Discover and the members of the Class.

## VII.   PLAINTIFFS' FACTUAL STATEMENT

Paragraphs one through and including thirty-four above are incorporated herein

by reference as if set forth herein at length.

35.    In the case of the individual Plaintiff, Diana M. Elinich, WWR, for and on

behalf of defendant, Discover, through and by its servicer, DB, filed a collection

11

complaint against Plaintiff seeking collection of an alleged defaulted credit card debt. This complaint was filed in the Court of Common Pleas of Bucks County, Pennsylvania, docketed as *Discover Bank v. Diana M. Elinich,* Number 2011-10543.

36.     This Complaint was amended as a result of preliminary objections filed by Plaintiff's defense counsel. A true and correct copy of the Amended Complaint, with exhibits[2], is attached hereto and marked Exhibit "A".

37.     The Amended Complaint in the underlying action references "contract", directly or indirectly, as follows:

   a.     "Count I – Breach of Contract";

   b.     Paragraph 9 states: "On or about November 22, 1999, [Discover], in response to an application for card membership, mailed a Discover credit card, , bearing account number ... along with a written Cardmember Agreement, which contained the terms and conditions of said credit card to [Elinich]. An exemplar copy of the written Cardmember Agreement containing the terms and conditions governing said account at the time of default (hereinafter referred to as the "Agreement") is attached hereto, marked Exhibit "A", and made a part hereof."

   c.     Paragraph 10 states "[Elinich] subsequently accepted the terms and conditions contained in the Agreement by using the credit card account for various purchases and/or transactions."

---

[2] The exhibits to the Amended Complaint include a copy of the "Discover® Cardmember Agreement, dated 1/11/11.

    d.      Paragraph 12 states: "Each month, pursuant to the terms and conditions of the Agreement, [Discover] sent a monthly statement setting forth the charges and payments made, if any, by [Elinich] and the applicable interest rates. ... ."

    e.      Paragraph 13 states: Pursuant to the Agreement, [Elinich] was required to pay the total balance due or in the alternative the minimum monthly payment as stated in the monthly statements sent to [Elinich]."

    f.      Paragraph 15 states: [Elinich] breached the terms and conditions of the Agreement between he parties ... ."

    g.      Paragraph 17 states: Pursuant to the Agreement, [Discover] is entitled to continuing finance charges ... ."

    h.      Paragraph 19 states: "[Discover] avers that the Agreement between the parties provides that [Elinich] will pay [Discover's] attorneys' fees (See Exhibit "A").

38.    In summary, the 2011 Agreement bears NO relationship to, and cannot be, the governing document for the following allegations set forth in the Amended Complaint:

    a.      Paragraph 9 references an Agreement governing in 1999 at the time of the issuance of the credit card;

    b.      Paragraph 10 asserts that Plaintiff accepted the 1999 Agreement as the basis for her use of the credit card by using the credit card;

    c.      Paragraph 12 alludes to the monthly statements sent to Plaintiff which set forth the applicable charges to the account, all pursuant to the terms and conditions of the Agreement.  Thus, Elinich's use of the credit card over the period of

13

twelve (12) years (from 1999 to 2011) was pursuant to the Agreement which, Defendants will have the Court believe, was the governing Agreement dated 2011;

d.      Similarly, paragraph 13 will have the Court accept the fact that the 2011 Agreement governed the payments due on the credit card for the twelve (12) years preceding 2011;

e.      Paragraph 15 decries the breach of the Agreement by Elinich: Which Agreement?

f.      Paragraph 17 claims that Discover is entitled to continuing finance charges: Pursuant to which Agreement, and how much, *et cetera*?

g.      Paragraph 19 claims that Discover is entitled to attorney's fees states: Pursuant to which Agreement, and how much, *et cetera?*

39.      The first issue is: To which Agreement do all of the references apply, the 2011 Agreement, the 1999 Agreement, or which agreements in between, if any. As we do not have the 1999 Agreement, we have no idea of the basis for any alleged replacement, amending, or modifying agreements subsequent to the Agreement accompanying the 1999 credit card issuance.

40.      The second issue is: As Defendants have been utilizing these wrong documents, falsely representing that they govern and have governed all transactions since the credit card issuance, on a national basis for collection law suits against alleged debtors/customers, is there a universal violation of the FDCPA and RICO and other consumer-protective statutes involving the conspiracy of the Defendants and the national collection attorney base utilized by Discover and DB.

14

41.     The basis of the captioned matter, and the basis of several other similar

cases[3],[4], all filed with this Court, is the fact that Defendants intentionally,

conspiratorially, and, most importantly, systemically and systematically, have used false

documentation to support the contractual obligations asserted against individuals sued by

or on behalf of Discover and DB in the their attempts to collect purported defaulted credit

card debt.

42.     This use of a Customer Agreement dated 2011 is not isolated; the use of a

wrong Customer Agreement is not isolated:  The use of the wrong Customer Agreements

is intentional, willful, and universal throughout the United States.

43.     The entire scheme is a lie, a fabrication to falsely facilitate collections.

44.     Clearly, Discover and DB counsel are told, by Discover and/or DB, to use

generic contracts, or the most recent, available, convenient contracts.

45.     These admissions basically affirm that there is an arbitrary assignment or

delegation of Customer Agreements to collection cases based **NOT** on the date of

---

[3] The following cases have been brought into the United States District Court for the
Eastern District of Pennsylvania for the same basic reasons as the captioned matter; that
is, the use of a false document to support the contractual allegations against credit card
holders who allegedly owed money pursuant to the false contract: *Franklin v. Grimes, et
al.,* 11-cv-07060 MSG (settled on an individual basis); *Equable Ascent Financial, LLC v.
Craggs, et al.,* 11-cv-04057 MSG (settled on an individual basis); *Fratz, et al. v. Capital
One , et al.,* 11-cv-02577 MSG (Capital One settled on an individual basis; the case
against Goldman & Warshaw, P.C. is pending the Court's decisions on Motions for
Summary Judgment, a Motion for Class Certification, and a Motion to Declassify a
Document marked "Confidential", and a document that is the basis of the RICO claim
asserted herein); *Trimble, et al. v. Discover Bank, et al.,* 11-cv-01069 MSG (settled
individually by Discover on an individual basis, later settled on an individual by
Weltman, Weinberg & Reis, LPA); and *Henner, et al v. Apothaker & Associates, P.C. et
al.,* 10-cv-05765 MSG (settled on an individual basis).
[4]Filed concurrently with the captioned case is a similar RICO/FDCPA action against
Capital One Bank (USA), N.A., its servicer, Capital One Services, LLC, and Capital
One's national attorney base.  Both cases are assigned to Judge Goldberg.

issuance of the respective credit card, or the true governing agreements, but rather on the most recent available contract.

46.     Certainly, then and as a class issue, for example, a 2011 Customer Agreement, by itself, cannot relate in any manner to an alleged defaulted credit card that defaulted before 2011, but was issued in1999.

47.     It is absolute that the Customer Agreements upon which ALL issued credit cards are based, regardless of any alleged subsequent amendments, modifications, or the like, are those issued when the credit card is issued, and, without that agreement, subsequent agreements do **NOT** correlate or relate in any manner. A 2011 Customer Agreement, by itself, particularly one not designated within the four corners of its own documents as an amendment or modification, does **NOT** govern a prior year's issued credit card(s).[5]

48.     Clearly, the attached agreement is false and is not applicable to the account of plaintiff without specific authority for the purported new Customer Agreement which, again, does not purport to be a modification or amendment.

49.     These wrongful collection activities are intended by the Defendants to secure collection from those whom the United States Congress has defined as the "least sophisticated consumer".

50.     Clearly, the language of the lawsuit against Plaintiff, a template, further exacerbates the misrepresentations by specifically referencing the 2011 Customer Agreement to the date of the credit card issuance AND all of the interim dates.

---

[5] In too many situations, the terms and conditions of Customer Agreements determine the rights and liabilities of customers. One significant example is the invocation of the "arbitration clauses" when the credit card issuer, or its successor, does not attain such an authority by the original Customer Agreement.

51.    These wrongful collection activities include, but are not limited to:

a.    Attaching as exhibits to complaints documentation knowingly not pertinent or relevant, constituting misrepresentation;

b.    Proffering as evidence documentation knowingly not pertinent or relevant, constituting misrepresentation;

c.    Intentionally using knowingly false documentation to attempt to effect collections by using the misrepresented documents as a foundation for the attempted collections.

52.    Plaintiff was caused to utilize the services of the undersigned attorney to exculpate Plaintiff from these wrongful collection efforts and paid a retainer of $1,500.00, which was a reasonable and necessary expenditure.

53.    Plaintiff seeks damages as requested herein arising from the intentionally false representations that charges[6] authorized by the bogus documentation do not specify the charges permitted to be imposed upon the Plaintiff and Class members by the appropriate and timely Customer Agreements issued by Discover at the time of the credit card issuance.

54.    Clearly, the defendants in cases brought under the "rules of engagement" issued by Discover and DB, in addition to being the "least sophisticated consumers", are at a distinct disadvantage in reading the complaint templates referencing the applicable

---

[6] Even if Plaintiff and the Class membership acknowledge that the charges for the actual purchases and/or cash advances are valid, other charges, such as for interest, late fees, over limit fees, attorney's fees and costs, and the like cannot be substantiated as due and owing by the Customer Agreements that are attached and imposed upon Plaintiff and the Class members.

Customer Agreement correlated with the date of credit card issuance, which just is not true.

## VIII.  **COMMON CLASS ELEMENTS**

Paragraphs one through and including fifty-five above are incorporated herein by reference as if set forth herein at length.

56.     Plaintiff and each member of the Class have been the subject of collection efforts to collect debts for which there is no corroborative evidence in the form of a valid Agreement.

57.     The law suits against Plaintiff and the members of the Class with their knowingly wrong attachments and the knowing lack of corroborative evidence constitute violations of the FDCPA.

58.     The law suits against Plaintiff and the members of the Class with their knowingly and intentional wrong attachments and the knowing lack of corroborative evidence, correlated with the systemic and systematic and conspiratorial general understanding of all defendants that these "least sophisticated consumers" will be at a significant disadvantage in defense of all of the charges attempted to be foisted upon them, constitute violations of RICO.

59.     All of these similar law suits are and have been in violation of various state consumer protection statutes.

60.     As to the individual Plaintiff, the attempts to collect and/or the collection of these unsubstantiated contractual charges and use of false documentation are in violation of the provisions of 73 P.S. § 201-2(xxi): Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

61.     These issues of fact, therefore, for all members of the Class are the same as set forth above, with minor, not substantial, variation.

62.     The questions of law governing the rights of each member of the respective Class are the same as they relate to Plaintiff, and involve the all-pervasive issue as to the legality in law of an attempt to collect credit card debt intentionally and systematically utilizing wrong documentation therefor.

63.     Defendants engage in a uniform scheme and course of conduct to inflate their respective profits by routinely attempting to collect and collecting credit card debt by filing law suits utilizing and intentionally misrepresenting that the wrong documentation governs the issuance of the pre-dated credit card issuance.

## X.    CAUSES OF ACTION

### COUNT I – RICO
### PLAINTIFF V. DEFENDANTS

The averments of paragraphs one through and including sixty-three above are incorporated herein by reference.

64.     At all relevant times, each of the Plaintiff and Defendants was a "person" within the meaning of 18 U.S.C. § 1961(3).

65.     At all relevant times, Defendants, (the "conspirators") acted together and in concert, thereby constituting a group of persons associated together in fact for the common purpose of carrying out the unlawful scheme described above.

66.     The Conspirators functioned as a continuing unit in carrying out this unlawful scheme.

67.     The Conspirators' association-in-fact (the "Enterprise") constitutes an "enterprise" within the meaning of 18 U.S.C. § 1961(4).

68.     The Enterprise functions as a continuing unit, commencing before the Class period, and continuing throughout the Class period and to the current time.

69.     By its nature, the Enterprise is open-ended and will continue indefinitely absent this litigation.

70.     The Conspirators each gave substantial assistance to the Enterprise as a whole and to the unlawful activities and scheme through which its affairs were conducted.

71.     In furtherance of the affairs of the Enterprise, the Conspirators committed a pattern of two or more violations of wire fraud and mail fraud during the Class period, as proscribed by 18 U.S.C. §§ 1341 and 1343.

72.     Specifically, during the Class period, the Conspirators utilized the United States wire system and the United States Postal System to transmit documents in interstate commerce by telephone facsimile in interstate commerce and through the mails both among the Conspirators and with Plaintiff and the members of the Class in furtherance of the Enterprise and the Conspirators' unlawful scheme.

73.     Discover, by itself and/or by DB, has used the United States Postal System in furtherance of the scheme as follows:

        a.      Transmitting Class members' files for collection to its (Discover's and DB's) collection attorneys throughout the nation;

        b.      Transmitting originally executed verifications, affidavits and other documents for attachment to the filed complaints throughout the nation;

        c.      Transmitting the false documentation cited above for attachment to filed complaints or as exhibits to be used in hearings;

d.      Transmitting instructions to its national attorney base regarding the use of the false Customer Agreements;

e.      Receipt by Discover and/or DB, by way of the United States Postal System, correspondence from its/their national attorney base with regard to the cases in which the corrupt documents are utilized;

f.      Receipt by Discover and/or DB, by way of the United States Postal System, of collections made by its national attorney base from the cases against the Plaintiff and Class members; and

g.      Other use of the United States Postal System in furtherance of the Enterprise.

74.     Discover, by itself and/or by DB, has used the United States interstate wire system in furtherance of the scheme as follows:

a.      Transmitting Class members' files for collection to its (Discover's and DB's) collection attorneys throughout the nation;

b.      Transmitting copies of executed verifications, affidavits and other documents for attachment to the filed complaints throughout the nation;

c.      Transmitting the false documentation cited above for attachment to filed complaints or as exhibits to be used in hearings;

d.      Transmitting instructions to its national attorney base regarding the use of the false Customer Agreements;

e.      Receipt by Discover and/or DB, by way of the United States interstate wire system, correspondence from its/their national attorney base with regard to the cases in which the corrupt documents are utilized;

21

f.     Receipt by Discover and/or DB, by way of the United States interstate wire system, of collections made by its national attorney base from the cases against the Plaintiff and Class members; and

g.     Other use of the United States interstate wire system in furtherance of the Enterprise, including, but not limited to, the telephone and facsimile systems.

75.     All defendants participated in the scheme and the furtherance thereof for and on behalf of the Enterprise,, all using the mail and wire systems as set forth above.

76.     Such telephone calls and facsimile transmissions in interstate commerce and use of the mails occurred on a routine, recurring, basis between and among the conspirators before and throughout the Class period.

77.     The Conspirators engaged in acts of wire and mail fraud for the purpose of furthering the policy of imposing upon, attempting to collect and/or collecting the illegal charges from, the Plaintiff and the members of the Class.

78.     Specific instances are set forth above in the factual statement as it relates to Plaintiff.

79.     As an intended, necessary and foreseeable consequence of the foregoing transactions and communications during the Class period, Plaintiff and the Class were caused injury and damage to their property.

80.     Discover, by its officers, directors, agents, employees, affiliates and/or other affiliated persons, actively participated in the direction, operation, and management of the Enterprise. Discover, by its officers, directors, agents, employees, affiliates and/or other affiliated persons, played a vital, directive, important and instrumental role in the Enterprise. Discover, by its officers, directors, agents, employees, affiliates and/or other

22

affiliated persons, has knowingly implemented decisions of the Enterprise, and its active participation was vital, directive, important and instrumental to the achievement of the Enterprise's primary goal of charging for and collecting these illegal charges.

81. DB, by its officers, directors, agents, employees, affiliates and/or other affiliated persons, actively participated in the direction, operation, or management of the Enterprise. DB, by its officers, directors, agents, employees, affiliates and/or other affiliated persons played a vital, directive, important and instrumental role in the Enterprise. COSLLC knowingly implemented decisions of the Enterprise, and its active participation was vital, directive, important and instrumental to the achievement of the Enterprise's primary goal of charging for and collecting these illegal charges.

82. WWR, by its officers, directors, agents, employees, affiliates and/or other affiliated persons, played a vital, directive, important and instrumental role in the Enterprise. WWR by its officers, directors, agents, employees, affiliates and/or other affiliated persons knowingly implemented decisions of the Enterprise, and its active participation was vital, directive, important and instrumental to the achievement of the Enterprise's primary goal of charging for and collecting these illegal charges.

83. The Conspirators conducted or participated in the conduct of the affairs of the Enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

84. In violation of 18 U.S.C. § 1962(d), the Conspirators conspired to conduct or participate in the conduct of the Enterprise's affairs through a pattern of racketeering activity violative of 18 U.S.C. § 1962(c).

85. As a direct and proximate result of violations by the Conspirators of 18

U.S.C. §§ 1341 and 1343 in furtherance of the Conspiracy, Plaintiffs and the Class have been caused to suffer injury and damage to their property.

86.     These damages were caused by the Conspirators' unlawful predicate acts of racketeering and their RICO violations.

87.     Plaintiff's damages and the damages to the members of the Class are represented by the imposition of charges for interest, late fees, over-the-limit fees, attorneys fees and costs, not specifically provided for in an applicable, Cardmember Agreement, by the utilization as corroborative evidence of Cardmember Agreements that do not correlate to the date(s) of the issuance of the credit cards that are and have been the subject of attempts to collect debt from Plaintiff and the Class members.  Specific amounts of damages have not been ascertained.

**COUNT II – VIOLATION OF 15 U.S.C. § 1692a, *ET SEQ.***
**CLASS ACTION**
**PLAINTIFF, *ET AL.* V. WELTMAN, WEINBERG & REIS, L.P.A.**
**AND DB SERVICING CORPORATION**

The averments of paragraphs one through and including eighty-seven above are incorporated herein by reference.

88.     WWR and DB are all "debt collectors" as that term is defined by 15 U.S.C. § 1692a(6).

89.     Plaintiff is a consumer as that term is defined by 15 U.S.C. § 1692a(3). The Class members are all consumers as that term is defined by 15 U.S.C. § 1692a(3).

90.     15 U.S.C. § 1692e provides: "A debt collector may not use any false, deceptive, or misleading representations or means in connection with the collection of any debt."  In fact, Law Firm, utilizing the false Cardholder Agreements has violated:

a.     15 U.S.C. § 1692e(2)(A):     The character, amount and legal status of the debt for which the attached agreement is a false representation of the basis for the debt;

b.     15 U.S.C. § 1692e(2)(B):     The false representation that the attached Customer Agreements representing the basis for the amounts claimed to be due and which may be lawfully received is a violation of the FDCPA.  There are false representations as Defendants knowingly have no such right contractual rights against Plaintiffs pursuant to the false Customer Agreements;

c.     15 U.S.C. § 1692e(10):     False and deceptive means to collect or to attempt to collect these debts to the extent that the cited basis for the debt is false.

91.     15 U.S.C. § 1692f, provides: "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."  The following conduct by Defendants evidence the violation by them of the FDCPA:

a.     Defendant used and continues to use unfair and unconscionable means to collect or attempt to collect debts based on law suits with false documentation attached and which is being utilized to fool the consumers into believing that the false attachments are sound bases for the law suits.

b.     15 U.S.C. § 1692f(1): The collection of any amount … unless such amount is expressly authorized by the agreement creating the debt or permitted by law".  The debts attempted to be collected and/or have been collected are not authorized or permitted by the attached false document contract.

92.     15 U.S.C. § 1692k specifically authorizes a private action to recover damages sustained because of these violations.

25

93.     15 U.S.C. § 1692k permits class actions.

94.     The acts and actions that are in violation of the FDCPA occurred within one year of the filing of this Complaint.

95.     The acts and actions by the "Debt Collectors" were clearly knowing and intentional.

96.     The specific acts and action by Defendants constituting the bases for this Complaint are set forth above, and are incorporated herein by reference, correlated with the attached exhibits, for the detail of these acts and actions, including, the time, date, place author and the specificity of the false communications, misrepresentations and violations of the FDCPA of which Plaintiff complains.

97.     It is believed and therefore averred that the Defendants facilitated these wrongful actions for the purpose of enhancing their collections, regardless of the falsity of the attached Cardmember Agreements.

98.     A simple reasonable review of the basic documentation as to each account which is the subject of such law suits would have divulged to Defendants that the attached Cardmember Agreement was not applicable, or was otherwise not the represented original Customer Agreement.

99.     A reasonable investigation would have revealed to all of the debt collectors that the Cardmember Agreement was a false representation that did not cover or concern themselves with the Plaintiff or his alleged debt.

100.    Plaintiff suffered damages in the form of the respective costs to secure legal representation to respond to the complaint.

26

101.    It is believed and therefore averred that Plaintiff and the members of the Class are entitled to recover damages as a result of the violations of the FDCPA by defendants in the form of compensatory damages, including, but not limited to, restitution to members of the Class who paid Defendant, statutory damages, attorney's fees and costs and interest.

102.    It is believed and therefore averred that the attachment of these fake documents and use as evidence were knowing and intentional, therefor.

103.    As such, Plaintiff and the members of the Class are entitled to treble damage and/or punitive damages as permitted by statute.

WHEREFORE, Plaintiff prays this Honorable Court grant appropriate damages, including, but not limited to

A.    Certifying the Class described, and appointing Plaintiff as representative of the Class, and the undersigned as Class counsel;

B.    Requiring that the "Debt Collectors" Defendants pay compensatory damages, restitution, statutory damages, attorney's fees and experts' fees, and punitive damages as appropriate; and

C.    Enjoining the Defendants from conducting such violative activity in the future, and

D.    Granting such other relief as the Court may deem appropriate.

## COUNT II - UNFAIR AND DECEPTIVE TRADE PRACTICES
## PLAINTIFF V. DEFENDANTS

The averments of paragraphs one through and including one hundred and three, above are incorporated herein by reference as if set forth herein at length.

27

104.    Defendants have advertised, offered for sale or distribution their respective products and services.

105.    Defendants have engaged in unfair and/or deceptive acts and trade practices, unfair methods of competition, and have practiced other unfair or deceptive acts or practices directly or indirectly adversely affecting the members of the Class, as described above.

106.    The acts and practices include, but are not limited to:

a.    Knowingly making false and misleading representations of fact, in writing;

b.    Knowingly misrepresenting that the attached Customer Agreements govern the basis of the law suits and the legal relationship between the parties;

c.    Utilizing false and misleading characterizations for the amount claims to be due, intending to mislead the consumer;

d.    Taking any action that cannot legally be taken or justified;

e    Otherwise engaging in other fraudulent conduct "which creates a likelihood of confusion or of misunderstanding";

f.    Engaging in any other conduct deemed to constitute unfair trade practices, unfair methods of competition, or other unfair or deceptive acts or practices.

107.    The facts constituting the basis for these unfair trade practices are as set forth above, and the attached exhibits. Defendants have engaged in other activity further exacerbating its participation in unfair trade practices.

108.    These unfair trade practices in which Defendants have participated are all intertwined with the factors constituting misrepresentation:

a. By acts, Defendants have made representations of a material nature that Defendants knew (or should have known) were misrepresentations. These misrepresentations were made to Plaintiff and the members of the Class.

b. These misrepresentations were made with the intent to cause Plaintiff, *et al.*, to reasonably rely to their detriment, which occurred, causing Plaintiff to suffer damage, including, but not limited to, paying sums of money for legal representation, and/or paying sums of money to pay for the debt Defendants claim Plaintiff owes misrepresenting the legal basis therefor;

c. Filing law suits with the knowledge that corroborative evidence was false.

d. These misrepresentations were made with the intent to cause Plaintiff, *et al.*, to reasonably rely to their detriment, which occurred, causing Plaintiff to suffer damage, including, but not limited to, attorney fees to contest the complaints.

e. Because of Defendants' misrepresentations and Plaintiff's reasonable reliance thereon, Plaintiff suffered damages, including the necessary legal representation.

f. The representations made by Defendants were false, constituting misrepresentations.

g. These misrepresentations were manifested by mischaracterizations in writings.

h. Plaintiff reasonably relied upon these misrepresentations to their detriment.

i. As a result of this reliance, Plaintiff has suffered additional damage, including the payment of attorney's fees.

109.    It is believed and therefore averred that the misrepresentations were intentional, or at least so recklessly made as to constitute intentional fraudulent statements.

110.    Defendants have, therefore, engaged in unfair trade practices to consumers. As such, Defendants are in violation of or has violated Pennsylvania Statutes 73 P.S. § 201-1, *et seq.*, and 73 P.S. § 2270.4(b)(5) ( and 73 P.S. § 2270.5), and the consumer statutes of other states.

111.    Defendants have, therefore, engaged in misrepresentation and fraudulent misrepresentation, causing Plaintiff to suffer damages as provided by statute.

WHEREFORE, Plaintiff prays this Honorable Court grant appropriate damages, including, but not limited to compensatory damages, statutory damages, treble damages, punitive damages, attorney's fees and costs, interest and such other relief as the Court may deem appropriate.

Respectfully submitted:

Stuart A. Eisenberg
Carol B. McCullough
MCCULLOUGH EISENBERG, LLC
65 West Street Road, A-105
Warminster, PA 18974
1-215-957-6411

Attorney for Plaintiff